**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

MARIA POWELL, on behalf of herself and all others similarly situated,

Plaintiff,

**-v.-**

GRAVITY SLEEP LLC d/b/a GRAVITY BLANKET,

Defendant.

---------------------------------------------------------------x

Case No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **MARIA POWELL**, ("Plaintiff" or "Ms. Powell,") individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, **Robert Schonfeld, Esq.** and **Jon Norinsberg, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, GRAVITY SLEEP LLC d/b/a GRAVITY BLANKET ("Gravity Blanket" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to ensure that its ecommerce Website, www.gravityblankets.com, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff **Maria Powell** is a resident of Bronx County and is permanently disabled due to legal blindness. Ms. Powell suffers from advanced proliferative diabetic retinopathy, a severe and progressive retinal disease recognized as one of the leading causes of permanent vision loss in adults. As documented and confirmed by Dr. Ralph Paternoster, O.D., of Park Professional Eyecare, on February 10, 2026, Ms. Powell's visual impairment meets both federal and New York State criteria for legal blindness. Dr. Paternoster further confirms that Ms. Powell's condition is permanent, incurable, and significantly impairs her ability to visually interpret printed or digital information without assistive technology. Exhibit A

2. Ms. Powell is a proficient user of screen-reading technology and keyboard navigation, which she relies on to access digital environments independently. Because she cannot visually perceive website content without accessible coding, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and screen-reader-compatible navigation in order to browse, evaluate, and purchase goods online. For blind consumers such as Ms. Powell, screen-reading software is not optional; it is the only means by which they can independently access the internet.

3. Ms. Powell is a consumer who has long struggled with chronic, disrupted sleep as a direct and ongoing consequence of her medical condition. The progression of advanced proliferative diabetic retinopathy is accompanied by significant physical discomfort, nighttime anxiety, and heightened physiological stress — all of which interfere with restorative sleep. Ms. Powell also regularly experiences nocturnal overheating, a recognized physiological symptom associated with her diabetic condition, which further compounds her difficulty achieving deep and continuous sleep.

4. In seeking solutions to address her chronic sleep disruption, Ms. Powell conducted extensive research into therapeutic sleep products. Through community discussions among blind and visually impaired consumers, online reviews, and publicly available articles, Ms. Powell learned that **Gravity Sleep LLC d/b/a Gravity Blanket** markets and sells therapeutic weighted blankets that are specifically advertised as clinically supported tools for reducing anxiety, lowering cortisol, and promoting deeper, more restorative sleep. Importantly, Ms. Powell deliberately chose to visit Defendant's website, www.gravityblankets.com, rather than purchasing these or similar products through a third-party retailer such as Amazon.com. Ms. Powell's decision to shop directly with Gravity Blanket was intentional and informed: she sought to purchase directly from the manufacturer in order to ensure that she was purchasing authentic products with the full manufacturer's warranty, to access the complete product selection offered exclusively on Gravity

Blanket's own website, to review the original clinical research and product specifications published directly by the brand, and to take advantage of any manufacturer-direct pricing, promotions, or bundle offers not available through third-party platforms. Ms. Powell understands that Amazon and other third-party retailers carry some Gravity Blanket products, but she specifically wished to transact directly with the brand to ensure product authenticity and access the full range of options. The availability of these products on Amazon did not satisfy her desire to purchase directly from Gravity Blanket's own website, and it does not cure or mitigate Defendant's obligation to maintain an accessible website.

5. **Defendant Gravity Sleep LLC d/b/a Gravity Blanket** markets itself as a leading provider of therapeutic, science-backed sleep products. Its website, www.gravityblankets.com, promotes the **Gravity Blanket (Original Weighted Blanket)** as the product that "started it all" — clinically supported by an independent study of more than 1,000 participants demonstrating that its deep-touch pressure stimulation reduces cortisol levels, lowers anxiety, and promotes deeper, more restorative sleep. Defendant also markets the **Gravity Cooling Weighted Blanket** as a premium therapeutic product combining deep-pressure stimulation with advanced temperature-regulation technology engineered to address nocturnal overheating — a condition Ms. Powell regularly experiences. These products are advertised as designed precisely for consumers who suffer from anxiety, disrupted sleep, and stress-related sleep impairment, directly corresponding to Ms. Powell's therapeutic needs.

6. On **May 12, 2026**, **May 19, 2026**, **June 3, 2026**, and **June 10, 2026**, Ms. Powell attempted to access Defendant's website using screen-reading technology, specifically NVDA, in order to evaluate and purchase the Gravity Blanket (Original Weighted Blanket) and the Gravity Cooling Weighted Blanket, review product descriptions and technical specifications, evaluate available weights and pricing options, and complete a purchase transaction directly with the

manufacturer. Her objectives were concrete, personal, and directly tied to her genuine therapeutic need for improved sleep and anxiety reduction.

7. Despite multiple attempts, Ms. Powell was unable to independently complete any of these tasks due to pervasive accessibility barriers on Defendant's website. An independent audit using SortSite, conducted on June 20, 2026, revealed unlabeled ARIA controls, visual label mismatches that prevent screen readers from announcing correct interactive element names, invalid list element structures, missing **lang** attributes on multiple pages, empty heading elements, inaccessible iframe content, interactive buttons improperly nested within anchor elements, and more than **89 pages** with insufficient color contrast errors and improper semantic markup. These barriers prevented Ms. Powell from accessing essential product information, selecting product options, evaluating pricing, or completing a purchase. Exhibit B.

8. Defendant's failure to design, construct, maintain, and operate its highly interactive ecommerce website in a manner compatible with screen-reading technology denied Ms. Powell equal access to the goods and services it provides to non-disabled customers. As a result, Ms. Powell was unable to evaluate and purchase the therapeutic sleep products she sought, depriving her of goods necessary to address serious, disability-related health needs. The existence of third-party retail options does not remedy or excuse Defendant's independent obligation under federal, state, and local law to maintain its own website in an accessible manner.

9. Plaintiff brings this civil action against Defendant **Gravity Sleep LLC d/b/a Gravity Blanket** for its violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., and related state and local laws. Plaintiff seeks injunctive relief requiring Defendant to adopt and implement policies, practices, and procedures to ensure that its website becomes and remains accessible to blind and visually impaired individuals. Plaintiff remains genuinely interested in purchasing Defendant's products **directly from Defendant's website** and intends to return to

www.gravityblankets.com as soon as it is remediated, so that she may independently browse, evaluate, and complete the purchases she was unable to make. Until Defendant's website is fully accessible, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

**JURISDICTION & VENUE**

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., which prohibits discrimination by places of public accommodation, including those operating commercial websites.

11. This Court has supplemental jurisdiction over Plaintiff's related state and city law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims. All claims arise from a common nucleus of operative fact: Defendant's operation of an inaccessible website that denies blind consumers equal access to its goods and services.

12. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, accessed Defendant's website from within this District, and personally experienced the discriminatory barriers alleged herein while attempting to evaluate and purchase Defendant's products. Courts in this Circuit consistently hold that venue is proper where the plaintiff encounters the discriminatory denial of access to a website. See *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.); see also *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

13. Defendant is subject to personal jurisdiction in this District because it purposefully avails itself of the privilege of conducting business in New York through its highly interactive commercial website, www.gravityblankets.com, which enables consumers to browse products,

review product descriptions and specifications, select product options, create accounts, and complete purchases. Defendant ships its products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have repeatedly held that operators of nationwide ecommerce platforms are subject to personal jurisdiction in New York when they direct commercial activity toward New York consumers. See *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

14. The United States Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA makes clear that businesses must ensure that their online services are accessible to individuals with disabilities, including blind and visually impaired users who rely on screen-reading technology.

15. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

16. **Plaintiff Maria Powell** is, and at all relevant times was, a resident of Bronx County, New York. Ms. Powell is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her treating optometrist, Ms. Powell suffers from advanced proliferative diabetic retinopathy, a permanent and incurable condition that severely restricts her visual acuity and visual fields and requires the use of screen-reading software to access digital content independently.

17. Ms. Powell is a consumer who deliberately and specifically sought to purchase

therapeutic weighted blanket products **directly from Defendant's website** in order to address the sleep disruption, anxiety, and physical discomfort directly resulting from her medical condition. Ms. Powell was aware that certain Gravity Blanket products are available through Amazon.com and other third-party retailers; however, she specifically chose to purchase directly from www.gravityblankets.com in order to obtain the full manufacturer warranty, access the complete product catalog, review original clinical research published by the brand, and take advantage of manufacturer-direct pricing and promotions. Ms. Powell sought to evaluate and purchase the **Gravity Blanket (Original Weighted Blanket)** and the **Gravity Cooling Weighted Blanket** — both of which Defendant markets as scientifically supported therapeutic sleep solutions designed to reduce anxiety, lower cortisol, and promote deeper, more restorative sleep. Defendant's products, available directly from Defendant's website, were among the specific goods she sought to evaluate and purchase, and it is Defendant's website specifically to which she intends to return once it has been made accessible.

18. **Defendant Gravity Sleep LLC d/b/a Gravity Blanket** is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in the United States. Defendant owns, operates, and controls the commercial ecommerce website www.gravityblankets.com, through which it markets, displays, and sells therapeutic weighted blankets, sleep accessories, and related products to consumers throughout the United States, including residents of New York.

19. Defendant transacts substantial business within the State of New York and within this District by offering its products to New York consumers, shipping products directly to New York addresses, and deriving significant revenue from New York-based transactions. Defendant's website is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7), because it is a sales and service platform offered to the general public.

20. At all relevant times, Defendant was responsible for designing, constructing, maintaining, and operating its website in a manner that complies with federal, state, and local disability-rights laws. Defendant failed to do so, resulting in the denial of full and equal access to Plaintiff and other blind and visually impaired consumers.

21. Ms. Powell is a proficient user of screen-reading technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Powell depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software. When websites lack meaningful alternative text, proper ARIA labeling, accessible navigation, or programmatically determinable structure, blind users such as Ms. Powell are denied the ability to browse, evaluate, and purchase goods independently.

## STATEMENT OF FACTS

22. Plaintiff **Maria Powell** is a legally blind consumer who relies exclusively on screen-reading software and keyboard navigation to access digital content. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Powell depends on businesses to design and maintain their websites in a manner that is compatible with screen-reading technology. When websites lack meaningful alternative text, proper ARIA labeling, accessible navigation, or programmatically determinable structure, blind users are denied the ability to browse, evaluate, and purchase goods independently.

23. Ms. Powell suffers from advanced proliferative diabetic retinopathy, a permanent and incurable retinal disease that severely restricts her visual acuity and visual fields. As confirmed by her treating optometrist, Dr. Ralph Paternoster, O.D., of Park Professional Eyecare, located at 1250 Pelham Parkway South, Bronx, New York 10461, Ms. Powell meets both federal and New

York State criteria for legal blindness. Ms. Powell's date of birth is March 14, 1998. Her condition significantly impairs her ability to visually interpret digital information without assistive technology.

24. As a direct and ongoing consequence of her medical condition, Ms. Powell has experienced chronic disruption of her sleep patterns and elevated anxiety. The physiological demands of advanced proliferative diabetic retinopathy, including the stress of managing a progressive visual impairment, create nighttime anxiety, difficulty achieving restful sleep, and physical discomfort during sleeping hours. Ms. Powell also regularly experiences nocturnal overheating as a physiological symptom associated with her diabetic condition. In seeking to address these conditions, Ms. Powell conducted research into therapeutic sleep products and identified deep-pressure stimulation weighted blankets as a potentially beneficial therapeutic solution.

25. In the course of her research, Ms. Powell learned about **Gravity Sleep LLC d/b/a Gravity Blanket** and its products through community discussions within the blind and visually impaired consumer network, online consumer reviews, and publicly available articles referencing the company's science-based marketing claims. Defendant's website prominently promotes the **Gravity Blanket (Original Weighted Blanket)** as the product that "started it all" — supported by independent research involving more than 1,000 participants demonstrating that the blanket's deep-pressure stimulation reduces cortisol levels, lowers anxiety, and promotes deeper and more restorative sleep. This evidence-based marketing directly addressed Ms. Powell's specific therapeutic needs and gave her concrete reason to seek to purchase this product directly from Defendant's website.

26. Ms. Powell also identified the **Gravity Cooling Weighted Blanket** as a product she wished to evaluate and purchase from Defendant's website. Defendant markets this product as a weighted blanket combining deep-pressure stimulation with advanced cooling technology

engineered to regulate body temperature throughout the night — a feature of particular relevance to Ms. Powell, who regularly experiences overheating during sleep. The prospect of a product that could address both her anxiety-related sleep disruption and her temperature dysregulation made the Gravity Cooling Weighted Blanket a product Ms. Powell specifically desired to research and purchase directly from the manufacturer.

27. Although Ms. Powell is aware that Amazon.com and other third-party retailers sell some Gravity Blanket products, she specifically chose to transact directly with Defendant at www.gravityblankets.com. Ms. Powell sought to purchase **directly from Gravity Blanket's website** because doing so would allow her to obtain: (1) products backed by the full Gravity Blanket manufacturer's warranty; (2) access to the complete product catalog, including all available weights, sizes, and configurations not always offered through third-party sellers; (3) the original clinical research, product comparisons, and brand-published specifications necessary to make an informed purchase decision; and (4) any manufacturer-direct pricing, promotions, or bundle offers available exclusively on www.gravityblankets.com. The availability of Gravity Blanket products on Amazon or other third-party websites did not and does not satisfy Ms. Powell's desire to purchase directly from Defendant, and does not cure or mitigate Defendant's independent legal obligation to maintain its own website in an accessible manner. Defendant's website is a distinct and independent public accommodation, and Plaintiff has a right to equal access to it regardless of whether alternative purchasing channels exist.

28. Defendant **Gravity Sleep LLC d/b/a Gravity Blanket** owns and operates the commercial ecommerce website www.gravityblankets.com, through which it markets and sells its line of therapeutic weighted sleep products to consumers nationwide. The website includes individual product pages, a weighted blankets collections page, a shopping cart with interactive selection controls, account creation functionality, and a checkout process. Defendant's website is a

highly interactive platform through which customers are expected to select product weights and options, add items to a cart, review pricing, and complete purchase transactions.

29. Between **May 12, 2026**, and **June 10, 2026**, Ms. Powell attempted on multiple occasions to access Defendant's website using NVDA screen-reading software in order to evaluate and purchase the Gravity Blanket (Original Weighted Blanket) and the Gravity Cooling Weighted Blanket directly from the manufacturer, review product specifications and weight options, compare available products, evaluate pricing, and complete a purchase. Her objectives were concrete, personal, and directly tied to her therapeutic needs and disability-related health conditions.

30. On **May 12, 2026**, Ms. Powell attempted to access the **Gravity Blanket (Original Weighted Blanket)** product page at gravityblankets.com/products/gravity-blanket. The page contains extensive product content, including product images, weight selection options, pricing information, marketing descriptions referencing the product's scientific backing, customer reviews, and interactive "Add to Cart" controls. However, when Ms. Powell navigated to the product page using NVDA, she immediately encountered an unlabeled ARIA control — identified by independent audit as an ARIA control with no accessible label at line 6453 of the product page source code. As a result, NVDA announced the interactive element as an empty or unlabeled control, rendering it meaningless and non-functional for a blind user. Ms. Powell was unable to determine the nature, function, or purpose of this control or how to interact with it to select product options or proceed with a purchase.

31. On the same product page, Ms. Powell further encountered a visual label mismatch barrier affecting the website's shopping cart element. The SortSite audit identified, at lines 2798 and 6884 of the product page source code, that the visual label "Cart · 0 · 0" displayed on screen did not match the accessible name "Cart" announced by NVDA. This discrepancy — classified as a WCAG Level A failure requiring that the visual label appear within the accessible name of the interactive

control — caused Ms. Powell's screen reader to announce incomplete and misleading information about the cart's status. The failure of the accessible name to match the visible label is a direct and recognized barrier to screen-reader navigation and confuses blind users attempting to manage their shopping session.

32. On the Gravity Blanket (Original Weighted Blanket) product page, Ms. Powell also encountered pervasive invalid list element structure barriers. The SortSite audit identified **li** element parent violations at lines 2417, 2436, 2453, 2470, 2487, and throughout the product page source code, reflecting violations of proper semantic HTML structure. These structural violations caused NVDA to misinterpret or fail to announce navigation menus, product feature lists, and other list-based content on the page, preventing Ms. Powell from identifying and understanding the product's features, specifications, and available options.

33. On **May 19, 2026**, Ms. Powell attempted to access the **Gravity Cooling Weighted Blanket** product page at gravityblankets.com/products/gravity-cooling-weighted-blanket. This page presents detailed product information about the cooling blanket's therapeutic features, available weights, pricing options, and interactive controls for selecting product configurations. However, Ms. Powell encountered an unlabeled ARIA control — identified by independent audit at line 6390 of the product page source code — which NVDA announced without any accessible label. Like the barrier on the Original Weighted Blanket page, this ARIA labeling failure rendered the interactive control completely opaque to screen-reading software. Ms. Powell was unable to determine the nature of the control, its purpose, or whether interaction with it was required to select a product option, add the product to her cart, or proceed to checkout.

34. On the Gravity Cooling Weighted Blanket product page, Ms. Powell also encountered the same visual label mismatch barrier affecting the cart element, with the accessible name "Cart" failing to reflect the visible label "Cart · 0 · 0" as identified at lines 2798 and 6821 of

the source code. NVDA's announcement of this incomplete accessible name caused Ms. Powell further confusion about the state of her shopping session and whether any items had been successfully added to her cart.

35. Across both product pages, Ms. Powell also encountered improper semantic markup barriers classified as WCAG Level A violations throughout both pages' source code, reflecting Defendant's failure to use proper **<strong>** semantic HTML elements in favor of CSS font-weight styling. These violations degrade NVDA's ability to convey meaning and emphasis within product descriptions, depriving Ms. Powell of the contextual understanding that sighted users derive from visually emphasized text within product content.

36. On **June 3, 2026**, Ms. Powell attempted to navigate Defendant's weighted blankets collections page at gravityblankets.com/collections/weighted-blankets in order to review the full range of weighted blanket products available directly from the manufacturer. However, this page was independently identified as containing interactive button elements improperly nested as descendants of **<a>** anchor elements — a WCAG Level A violation identified at multiple locations on the collections/weighted-blankets page and on related collections pages including bedding-sleepwear, modernist-home-collection, and search result pages. This improper HTML nesting causes screen readers such as NVDA to misinterpret interactive elements, fail to announce them correctly, or skip them entirely during keyboard navigation. As a result, Ms. Powell was unable to navigate product listings, activate product-level calls to action, or identify her desired products within the collections page.

37. On **June 10, 2026**, Ms. Powell made a final attempt to access both product pages and the weighted blankets collections page in an effort to complete the purchases she had been unable to finalize on her prior visits. On each occasion, she encountered the same unlabeled ARIA controls, the same visual label mismatches on the cart element, the same structural list element violations, the

same improperly nested button-in-anchor barriers, and the same improper semantic markup violations that had prevented her from independently evaluating and purchasing Defendant's products on her prior visits. Ms. Powell was again unable to navigate the product pages, understand the available weight and configuration options, or complete a purchase transaction directly from the manufacturer.

38. Across all pages of Defendant's website, the independent SortSite audit conducted on June 20, 2026 revealed pervasive additional accessibility barriers affecting 89 to 94 of the website's scanned pages, including: contrast ratio failures across 89 pages rendering text unreadable to users with low vision; missing **lang** attribute identifiers on 4 pages preventing screen readers from correctly interpreting language; empty heading elements on the contact and press pages; missing **title** attributes on iframe elements; multiple links with identical visible text pointing to different destinations; improper use of **aria-label** and **aria-labelledby** attributes on elements that prohibit programmatic naming across 90 pages; disabled viewport zoom on one page; and the use of absolute rather than relative CSS units where zoom is disabled. These barriers collectively prevented Ms. Powell from navigating the pages, understanding the structure of the content, accessing product details, or completing a purchase.

39. As a result of these barriers, Ms. Powell was denied the full and equal enjoyment of Defendant's website and was unable to purchase the therapeutic sleep products she sought for her disability-related health needs. Because Gravity Blanket's products are marketed with specific therapeutic claims regarding deep-pressure stimulation, anxiety reduction, cortisol reduction, and sleep improvement that are unique to the brand, and because Ms. Powell specifically desired to purchase directly from the manufacturer for the reasons described herein, the availability of third-party retail options did not and does not satisfy Ms. Powell's desire or right to access Defendant's own website on equal terms as non-disabled consumers.

40. Ms. Powell remains highly interested in purchasing Gravity Blanket's products **directly from www.gravityblankets.com** and intends to return to Defendant's website as soon as it is made accessible. The therapeutic benefits marketed by Defendant — specifically the clinically-supported reduction in cortisol and anxiety, the promotion of deeper sleep, and the cooling regulation features of the Gravity Cooling Weighted Blanket — directly address her disability-related conditions, and she wishes to purchase them from the source. However, the persistent barriers she encountered deter her from attempting to use the website again until it is fully remediated. Her injury is ongoing because Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility.

## NATURE OF ACTION

41. The internet is an essential tool for modern life. It is a primary means by which consumers shop, communicate, learn, work, and access goods and services. For blind and visually impaired individuals, equal access to websites is not a convenience — it is a civil right. When digital platforms are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence, autonomy, and equal participation that sighted users take for granted.

42. Blind and visually impaired individuals access websites using screen-reading software, which converts digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. When websites lack meaningful alternative text for images, contain unlabeled ARIA controls, fail to ensure that visual labels match accessible names, rely on improperly structured HTML that confuses screen readers, use interactive elements that are inaccessible to keyboard navigation, or present content with insufficient contrast, blind users cannot navigate, understand, or interact with the website.

43. The World Wide Web Consortium (W3C) has published the Web Content

Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

44. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. The ADA's protections extend to digital spaces. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that businesses must ensure that their online services are accessible to individuals with disabilities, including blind and visually impaired users who rely on screen-reading technology.

45. Defendant **Gravity Sleep LLC d/b/a Gravity Blanket** owns and operates the commercial website www.gravityblankets.com, through which it markets, displays, and sells therapeutic weighted blankets and sleep accessories to consumers nationwide. Defendant's business model is built around providing health-focused, science-backed sleep products — including the Gravity Blanket (Original Weighted Blanket) and the Gravity Cooling Weighted Blanket — that require users to access detailed product descriptions, weight and configuration options, clinical research citations, pricing information, and purchasing functionality online. By operating this commercial website and holding it out to the public as a platform through which consumers can browse and purchase its products, Defendant has voluntarily assumed the obligation to ensure that its website is accessible to all consumers, including blind and visually impaired individuals.

46. Plaintiff attempted to access Defendant's website on multiple occasions to evaluate

and purchase the Gravity Blanket (Original Weighted Blanket) and the Gravity Cooling Weighted Blanket directly from the manufacturer. These products were uniquely suited to her disability-related therapeutic needs. Ms. Powell specifically chose Defendant's website over third-party retail options, for the reasons described in the Statement of Facts above. Plaintiff's objectives were concrete, personal, and directly tied to addressing the chronic sleep disruption, anxiety, and physical discomfort caused by her medical condition.

47. However, due to pervasive accessibility barriers — including unlabeled ARIA controls on both product pages, visual label mismatches on the cart element, invalid list element structures, interactive buttons improperly nested within anchor elements, missing **lang** attributes, insufficient color contrast across 89 pages, inaccessible iframe elements, empty heading elements, and additional structural and semantic markup violations — Plaintiff was unable to independently review product descriptions, evaluate specifications and weight options, navigate product listings, add products to her cart, or complete a purchase transaction.

48. Defendant's failure to design, construct, maintain, and operate its website in a manner compatible with screen-reading technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms. The fact that Defendant's products may be available through third-party retailers such as Amazon.com does not excuse Defendant's obligation to ensure that its own website is accessible, nor does it cure the discrimination that results from Defendant's maintenance of an inaccessible direct retail platform.

49. Plaintiff brings this action to enforce her civil rights and to secure injunctive relief requiring Defendant to adopt and implement policies, practices, and procedures that will ensure that its website becomes and remains fully accessible to blind and visually impaired individuals. Plaintiff

remains highly interested in purchasing Gravity Blanket's products directly from www.gravityblankets.com and intends to return to the website as soon as it is made accessible. Without remediation, Plaintiff and other blind consumers will continue to be excluded from equal participation in Defendant's online marketplace.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of all legally blind individuals in the United States who have attempted to access Defendant's website and, as a result of Defendant's failure to design, construct, and maintain the website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

51. Plaintiff also seeks certification of a New York subclass consisting of all legally blind individuals residing in the State of New York who have attempted to access Defendant's website and were denied equal access to the goods, services, and information offered thereon.

52. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff but is believed to be in the thousands, given the prevalence of blindness and visual impairment in the United States and the widespread use of Defendant's website by consumers seeking to purchase therapeutic sleep products directly from the manufacturer.

53. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's website contains barriers that prevent blind and visually impaired individuals from accessing its content using screen-reading software;

- Whether Defendant's failure to make its website accessible violates Title III of the ADA;
- Whether Defendant's conduct violates the New York State Human Rights Law;
- Whether Defendant's conduct violates the New York City Human Rights Law;
- Whether Defendant has adopted adequate policies and practices to ensure ongoing website accessibility; and
- Whether injunctive relief is warranted to require Defendant to make its website fully accessible to blind and visually impaired individuals.

54. Plaintiff's claims are typical of the claims of the members of the Class and Subclass because Plaintiff, like all Class members, is legally blind, attempted to access Defendant's website using screen-reading software, and was denied equal access due to the same or similar accessibility barriers. Plaintiff's injuries are typical of those sustained by the Class and Subclass, and Plaintiff seeks the same injunctive relief on behalf of all members.

55. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has no interests that are antagonistic to the interests of the Class or Subclass, and Plaintiff is committed to vigorously prosecuting this action. Plaintiff has retained counsel experienced in disability rights litigation, class actions, and federal civil rights enforcement.

56. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility, thereby subjecting all blind and visually impaired individuals to the same discriminatory barriers.

57. Certification under Rule 23(b)(2) is appropriate because Defendant has acted and continues to act in a manner that is generally applicable to the Class and Subclass by maintaining a

website that is inaccessible to blind and visually impaired individuals. The relief sought by Plaintiff — including injunctive relief requiring Defendant to make its website accessible — will benefit all members of the Class and Subclass.

## FIRST CAUSE OF ACTION
**Violation of Title III of the Americans with Disabilities Act**
**(42 U.S.C. § 12181 et seq.)**

58. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

59. Defendant **Gravity Sleep LLC d/b/a Gravity Blanket** owns, operates, and controls the commercial website www.gravityblankets.com, which constitutes a sales platform and service channel offered to the general public. As such, Defendant is a "public accommodation" within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7). The DOJ has repeatedly confirmed that commercial websites operated by entities that sell goods and services to the public constitute public accommodations within the scope of Title III.

60. Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182(a). This prohibition extends to the operation of commercial websites. The failure to make a website accessible to blind and visually impaired users constitutes unlawful discrimination under Title III.

61. Defendant has violated Title III by failing to design, construct, maintain, and operate its website in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's website contains numerous barriers that prevent blind users from accessing essential content, including: (a) unlabeled ARIA controls on both the Gravity Blanket and Gravity Cooling Weighted Blanket product pages; (b) visual label mismatches on the cart element across both product pages; (c) invalid list element structures affecting navigation and product content on both product pages; (d) interactive button elements improperly nested within anchor

elements on multiple collections and search pages; (e) missing **lang** attributes on four pages; (f) empty heading elements; (g) inaccessible iframe elements lacking title attributes; (h) contrast failures across 89 pages; (i) improper use of **aria-label** and **aria-labelledby** attributes on elements that prohibit programmatic naming across 90 pages; (j) disabled viewport zoom; and (k) improper use of absolute CSS units where zoom is disabled.

62. These barriers deny blind consumers equal access to Defendant's goods and services, including the ability to review product descriptions, evaluate product weight and configuration options, navigate product collections, add items to a shopping cart, and complete purchases of therapeutic sleep products directly from the manufacturer.

63. Defendant's conduct constitutes discrimination under 42 U.S.C. § 12182(b)(2)(A)(ii) because it has failed to make reasonable modifications in policies, practices, or procedures necessary to afford equal access to individuals with disabilities. The accessibility barriers on Defendant's website are the direct result of Defendant's failure to implement accessible design practices, failure to test its website with screen-reading software, and failure to adopt and enforce an accessibility policy. These modifications are reasonable, readily achievable, and required by law.

64. Defendant's conduct also violates 42 U.S.C. § 12182(b)(2)(A)(iii) because it has failed to take steps necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals due to the absence of auxiliary aids and services. Defendant has failed to provide the auxiliary aids and services — including accessible website design and WCAG-conforming coding practices — that are necessary to afford blind individuals an equal opportunity to participate in, and benefit from, the goods, services, and information offered on Defendant's website.

65. Defendant's ongoing failure to make its website accessible constitutes a continuing violation of Title III of the ADA. Each time a blind or visually impaired individual attempts to

access Defendant's website and is denied equal access due to the accessibility barriers described herein, a new violation of the ADA occurs.

66. Plaintiff seeks injunctive relief requiring Defendant to take all steps necessary to bring its website into full compliance with the requirements of Title III of the ADA and to adopt and maintain policies that ensure its website remains accessible to blind and visually impaired individuals on an ongoing basis.

## SECOND CAUSE OF ACTION
**Violation of the New York State Human Rights Law**
**(N.Y. Exec. Law § 290 et seq.)**

67. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

68. The New York State Human Rights Law ("NYSHRL") prohibits discrimination on the basis of disability in all places of public accommodation. N.Y. Exec. Law §§ 292(9), 296(2)(a). The NYSHRL defines "place of public accommodation" broadly to encompass any establishment that offers services, goods, or privileges to the general public, including commercial websites. Defendant's website constitutes such a place of public accommodation.

69. Defendant's website is a sales and service platform through which it offers its products to the general public of New York State. By operating this website and directing its commercial activity toward New York residents, Defendant operates a place of public accommodation within the meaning of the NYSHRL.

70. Defendant has violated the NYSHRL by denying Plaintiff and other blind consumers equal access to its goods and services due to the presence of pervasive accessibility barriers on its website. The WCAG Level A and Level AA failures identified by the SortSite audit on June 20, 2026 — including unlabeled ARIA controls, visual label mismatches, structural HTML violations, contrast failures, and missing language attributes — collectively render Defendant's website inaccessible to blind and visually impaired users.

71. Defendant's conduct constitutes unlawful discrimination because it subjects blind individuals to inferior access, unequal treatment, and exclusion from equal participation in the digital marketplace. Defendant has failed to take reasonable steps to ensure that its website is accessible to blind consumers, and continues to operate its website with knowledge of its inaccessibility.

72. Defendant's failure to make its website accessible is a direct violation of N.Y. Exec. Law § 296(2)(a), which prohibits any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation from refusing, withholding from, or denying any of the accommodations, advantages, facilities, or privileges thereof to any person on account of disability.

## THIRD CAUSE OF ACTION
**Violation of the New York City Human Rights Law**
**(N.Y.C. Admin. Code § 8-101 et seq.)**

73. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

74. The New York City Human Rights Law ("NYCHRL") provides broad and independent protections against discrimination on the basis of disability. N.Y.C. Admin. Code §§ 8-102, 8-107(4). The NYCHRL must be construed independently of, and more liberally than, its federal and state counterparts, in a manner that maximizes protection for victims of discrimination. The NYCHRL imposes an affirmative obligation on places of public accommodation to ensure equal access for individuals with disabilities.

75. Defendant's website constitutes a place of public accommodation under the NYCHRL because it is a platform through which Defendant offers its products and services to the public, including residents of New York City. By targeting New York City consumers through its nationwide ecommerce website, Defendant is subject to the requirements of the NYCHRL.

76. Defendant has violated the NYCHRL by denying Plaintiff and other blind consumers

equal access to its goods and services due to the presence of accessibility barriers that prevent blind users from navigating, understanding, and interacting with the website. The barriers identified by the SortSite audit constitute systemic failures of accessible design that affect virtually every page of Defendant's website, including both product pages on which Ms. Powell specifically sought to purchase the Gravity Blanket (Original Weighted Blanket) and the Gravity Cooling Weighted Blanket.

77. Under the NYCHRL, it is an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation to refuse, withhold from or deny to any person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of such place of public accommodation because of such person's disability. N.Y.C. Admin. Code § 8-107(4)(a). Defendant's conduct falls squarely within this prohibition.

78. The NYCHRL requires public accommodations to provide equal access and prohibits any practice that results in unequal treatment or disparate impact on individuals with disabilities. Defendant's failure to maintain an accessible website has a disparate impact on blind and visually impaired consumers, who are entirely unable to access the goods and services offered on www.gravityblankets.com without accessibility remediation.

79. Defendant's conduct violates the NYCHRL because it denies blind consumers the ability to independently browse, evaluate, and purchase Defendant's therapeutic sleep products directly from the manufacturer, thereby treating blind consumers less favorably than non-disabled consumers who can access and use the website without barriers.

80. Plaintiff seeks injunctive relief and all other remedies available under the NYCHRL, which must be construed liberally in favor of civil rights plaintiffs.

## FOURTH CAUSE OF ACTION

**Violation of the New York Civil Rights Law**

**(N.Y. Civ. Rights Law §§ 40–41)**

81. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

82. The New York Civil Rights Law §§ 40 and 41 guarantee all persons, regardless of disability, the equal protection of the laws and the full and equal enjoyment of any place of public accommodation, resort, or amusement. N.Y. Civ. Rights Law § 40. Section 41 provides a private right of action for any person aggrieved by a violation of Section 40, and authorizes the recovery of statutory damages and injunctive relief.

83. Defendant's website, www.gravityblankets.com, is a place of public accommodation within the meaning of the New York Civil Rights Law because it is a commercial platform held out to the public through which Defendant sells products and services to consumers in New York State and New York City.

84. By operating an inaccessible website that denies blind consumers equal access to its goods and services, Defendant has violated Plaintiff's rights under N.Y. Civ. Rights Law § 40. Defendant has denied Plaintiff and other blind consumers the full and equal enjoyment of its commercial website, including the ability to independently browse, evaluate, and purchase Defendant's products on equal terms as non-disabled consumers.

85. Defendant's conduct constitutes a denial of equal access to and equal enjoyment of a place of public accommodation within the meaning of N.Y. Civ. Rights Law § 40. Defendant's ongoing operation of an inaccessible website, without any policy or plan to remediate the accessibility barriers identified herein, constitutes a continuing violation of the New York Civil Rights Law.

86. Plaintiff is entitled to injunctive relief requiring Defendant to bring its website into

compliance with applicable accessibility standards, and to the statutory damages provided by N.Y. Civ. Rights Law § 41.

## FIFTH CAUSE OF ACTION
**Declaratory Judgment**
**(28 U.S.C. §§ 2201–2202)**

87. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

88. An actual controversy exists between the parties regarding Defendant's ongoing operation of an inaccessible website and its obligations under federal, state, and local disability-rights laws. Defendant has failed and continues to fail to make its website accessible to blind and visually impaired individuals, and has made no representation or commitment to remediate the accessibility barriers described herein.

89. Plaintiff seeks a declaration that Defendant's website, www.gravityblankets.com, in its current form, violates Title III of the ADA, the NYSHRL, the NYCHRL, and the New York Civil Rights Law, and that Defendant is required to remediate those violations.

90. Plaintiff further seeks a declaration that Defendant must bring its website into full compliance with WCAG 2.1 AA or an equivalent standard and must adopt, implement, and maintain written policies to ensure ongoing website accessibility, including policies requiring periodic accessibility audits, staff training, and a publicly available accessibility statement that provides contact information for disabled users to report accessibility barriers.

91. Declaratory relief is necessary and appropriate to resolve the legal rights and obligations of the parties, to provide Plaintiff with meaningful guidance regarding her rights, and to prevent future violations of the ADA, NYSHRL, NYCHRL, and New York Civil Rights Law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title

III of the ADA, 42 U.S.C. § 12182 et seq.;

- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.gravityblankets.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG 2.1 AA-conforming accessibility measures, implementation of a written accessibility policy, periodic accessibility audits, and staff training on accessible website design;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by federal, state, and local law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
June 25, 2026

Respectfully submitted,
JOSEPH & NORINSBERG LLC
Attorneys for Plaintiff
By: */s/ Robert L. Schonfeld*
Robert L. Schonfeld, Esq.
Jon L. Norinsberg, Esq.
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com